UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

HABEEB AHMAD,

                                    Plaintiff,

         - against -

NYU LANGONE HEALTH SYSTEM, NYU
GROSSMAN SCHOOL OF MEDICINE, SCOTT
MELLYNCHUK and DOUG LAZZARO,

                                    Defendants.

-------------------------------------------------------------x

**JOINT PROPOSED JURY
INSTRUCTIONS**

Case No. 22 Civ. 1248 (JLR)(GWG)

      Plaintiff, Habeeb Ahmad (hereinafter "Plaintiff"), and Defendants NYU Langone Health

System, NYU Grossman School of Medicine ("NYU Grossman"),[1] Scott Mellynchuk

("Mellynchuk"), and Douglas Lazzaro ("Lazarro") (sometimes collectively "Defendants") as for

their Jury Instructions set forth as follows[2]:

## I.      INITIAL INTRODUCTORY INSTRUCTIONS[3][4]

**Joint Instruction No. 1:      Introduction**

---

[1] Plaintiff was employed by NYU Grossman, an administrative division of New York University ("NYU").  As such, New York University is the proper defendant. The parties are deliberating on amending the case caption before trial.

[2] Defendants reserve the right to amend and supplement their proposed jury instructions as required.

[3] Defendants respectfully note that in addition to substantive instruction charges for the jury, they have also submitted general instruction charges in an abundance of caution,  but are mindful that the Court likely has its own preliminary and general instructions for use at trial.  In addition, the parties respectfully reserve the right to include additional substantive jury charges, if necessary, at the time of trial based upon the course of the proceedings.

[4] Where the parties could not reach consensus, the parties submit alternative proposed language and indicated it as such.

Ladies and gentlemen of the jury, we are about to begin the trial of the case you heard about during the jury selection.  Before the trial begins, I am going to give you instructions that will help you understand what will be presented to you and how you should conduct yourself during trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you.  The party who sues is called the Plaintiff. In this action, the Plaintiff is Habeeb Ahmad.  The parties being sued are called Defendants.  In this action, the Defendants are NYU Grossman, Scott Mellynchuk and Douglas Lazzaro.

Over the course of this trial, you will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court." When I say, "admitted into evidence" or "received into evidence," I have ruled that this particular statement or the particular exhibit may be considered by you in making decisions you must make at the end of the case.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible.  You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.  When I "sustain" an objection, I am excluding that evidence from this trial.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inference or conclusions from the question.

You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

During the course of the trial I may ask a question of the witness. If I do, that does not indicate that I have any opinion about the facts in the case.

The lawyers are not allowed to speak with you during the case. If you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but I ask that you keep in mind the importance of the matter you are here to determine and ask that you will be patient even though the case may seem to go slowly.

**SOURCE:** 3 O'Malley, Grenig & Lee, *Federal Jury Practice & Instructions* ("Fed. Jury Prac. & Instr."), § 101:01, 30, 31, 49 (6th ed.); 4 Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, Modern *Federal Jury Instructions-Civil* ("Modern Fed. Jury Instr.-Civil"); Model Civ. Jury Instr. 3rd Cir. 1.1-1.12 (2017) (adapted).

**Joint Instruction No. 2:     Order of Trial**

The case will proceed in the following order:

First, Plaintiff will make his opening statements outlining his case. Immediately after Plaintiff's statement, Defendants will make their opening statement outlining their respective cases. The parties are not required to make an opening statement. What is said in opening statements is not evidence, but is simply designed to provide you with an introduction as to the evidence that the parties intend to produce.

Second, Plaintiff will introduce evidence in support of his claims. At the conclusion of Plaintiff's case, Defendants will introduce evidence if they choose. In order to keep the case moving in an orderly fashion, the Defendants will present whatever questions or exhibits they would have put on during their case at the time the Plaintiff calls the witness to the stand. This will keep us from having to call witnesses more than once and save time.

Third, the parties may present closing arguments to you as to what they consider the evidence has shown and as to the inferences that they contend you should draw from the evidence. What is said in closing arguments, just as what is said in opening statements, is not evidence. The arguments are designed to present to you the contentions of the parties based on the evidence introduced.

Fourth, I will instruct you on the law which you are to apply in reaching your verdict.

**SOURCE:** O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §101.02 (5th ed. 2000).

**Joint Instruction No. 3:    Province of Judge and Jury**

Now that I have described the trial itself, let me explain the jobs that you and I are to perform during the trial. After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. By your verdict, you will decide disputed issues of fact.

I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply. In other words, as Judge, I will decide which rules of law apply to this case. I will make those decisions in response to questions raised by the parties as we go along and also in

the final instructions given to you after the evidence and arguments are completed. I must stress

that you are required to accept the rules of law that I give you, whether or not you agree with them.

As the jury, you will decide whether Plaintiff has proved, by a preponderance of the

evidence, that Defendants violated the law. You must base that decision only on the evidence in

the case and my instructions about the law.

I am permitted to comment on the evidence in the case during the trial or while instructing

the jury. Such comments are only expressions of my opinion as to the facts. You may disregard

these comments entirely, because you are to determine for yourself the weight of the evidence and

the credibility of each of the witnesses.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.); *Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991) ("[A] federal district judge who conducts a jury trial has the duty to see that the facts are clearly presented . . .. In order to do so, the judge is permitted to summarize the evidence for the jury and, if she chooses, to comment on it. In addition, a judge may also interpose relevant questions to witnesses to clarify both legal and factual issues and thus minimize possible confusion in the jurors' minds").

**Joint Instruction No. 4:        Jury Conduct**

Ladies and gentlemen, to ensure fairness to the parties in this action, you must obey the

following rules:  Do not talk to each other about this case or about anyone involved with this case

until the end of the trial when you go to the jury room to decide on your verdict. Do not talk with

anyone else about this case or about anyone involved with this case until the trial has ended and

you have been discharged as jurors. "Anyone else" includes members of your family and your

friends. You may tell people you are a juror, but do not tell them anything else about the case.

Outside the courtroom, do not let anyone tell you anything about the case, or about anyone

involved with it until after you have reached your verdict. If someone should try to talk to you

about the case before then, please report it to me immediately.

During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case -- you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.  Do not do any research, such as checking dictionaries or searching the Internet, or make any investigation about the case, the parties, the witnesses, or the attorneys on your own.

Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.  If you need to tell me something, simply give a signed note to the clerk to give to me.  To reiterate, during the course of the trial you will receive all the evidence you properly may consider to decide the case. You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or corporations involved in the case. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I expect you will inform me if you become aware of another juror's violation of these instructions.  The reason for these rules, as I am certain you will understand, is that your decision in this case must be made solely on the evidence presented at the trial.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:11-13 (6th ed.) (adapted).

**Joint Instruction No. 5: Conduct of Counsel**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All those questions of law must be decided by me, the Court.  You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the Court for a ruling on the law.

As I have already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

**SOURCE:**  Instruction 71-6, <u>Modern Federal Jury Instructions—Civil</u> (LexisNexis 2009 ed.).

**Joint Instruction No. 6:        Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nothing I may have said during the trial or what I may say in these instructions is evidence pertaining to any fact. In this connection, you should bear in mind that a question put to a witness is never evidence; it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the either of the parties has proven its case.

I also ask you to draw no inference from the fact that upon occasion I may ask questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10 (6th ed.); 71 Modern Fed. Jury Instr.-Civil 71.01, 71-1, 71-2.

**Joint Instruction No. 7:**       **Duty of Impartiality**

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence. It would be improper for you to consider any personal feelings you may have about one of the parties. It would be equally improper for you to allow any feelings you might have about the nature of the claim against the Defendants to influence you in any way. The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All litigants are equal before the law and are entitled to the same fair consideration as you would give any other individual party.

All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

**SOURCE:** 4 Modern Fed. Jury Instr.-Civil 71.01, 71-4, 72.01, 72-1; 3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10, 103:12 (6th ed.).

**Joint Instruction No. 8:**        **Burden of Proof** – PLAINTIFF'S VERSION

This is a civil case. In a civil case such as this one, Plaintiff has the burden to prove his claims by a preponderance of the evidence. That means you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise

instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. One way to think about this is as follows: if you were to put all of the evidence in favor of Plaintiff, and all of the evidence in favor of Defendants on opposite sides of a scale, Plaintiff would have to make the scale tip somewhat to his side, however slightly. If, in your view, the scale tips in Plaintiff's favor, he has met his burden, and your verdict must be for Plaintiff. If Plaintiff fails to meet this burden, your verdict must be for the Defendants.

If Plaintiff fails to establish any element of his claim by a preponderance of the evidence, you should find for the Defendants as to that claim. I will explain these elements to you in detail.

Please keep in mind that, when assessing whether a party has met its burden of proof on any claim, the question is not which party called the greater number of witnesses, or how much time one party or another spent on that claim during the trial. Your focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 101:41, 104:01 (6th ed.) (adapted); Modern Fed. Jury Instr.-Civil 73.01, 73-1, 73-2; *see also* Model Civ. Jury Instr. 9th Cir. 1.3 (2007); Model Civ. Jury Instr. 3rd Cir. 1.10 (2011).

**Joint Instruction No. 8:**       **Burden of Proof** – DEFENDANTS' Version

This is a civil case. In a civil case such as this one, Plaintiff has the burden to prove every essential element of his claims by a preponderance of the evidence. When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. One way to think about this is as follows: if you were to put all of the evidence in favor of Plaintiff, and all of the evidence in favor of Defendants on opposite sides of a scale, Plaintiff would have to make the scale tip somewhat to his side, however slightly. If, in your view, the scale tips in Plaintiff's favor, he has met his burden, and your verdict must be for Plaintiff. If Plaintiff fails to meet this burden, your verdict must be for the Defendants.

If Plaintiff fails to establish any element of his claim by a preponderance of the evidence, you should find for the Defendants as to that claim. I will explain these elements to you in detail.

Please keep in mind that, when assessing whether a party has met its burden of proof on any claim, the question is not which party called the greater number of witnesses, or how much time one party or another spent on that claim during the trial. Your focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 101:41, 104:01 (6th ed.) (adapted); Modern Fed. Jury Instr.-Civil 73.01, 73-1, 73-2; Model Civ. Jury Instr. 9th Cir. 1.3 (2007); Model Civ. Jury Instr. 3rd Cir. 1.10 (2011).

## II.    <u>INITIAL INSTRUCTION AS TO EVIDENCE</u>

**Joint Instruction No. 9:**        **Evidence in this Case**

The evidence in the case consists of the following:  the sworn testimony of the witnesses, no matter who called the witness; all exhibits received in evidence, regardless of who may have produced the exhibits; and all facts that may have been judicially noticed, admitted by the parties or stipulated to between the parties, and that you must take as true for purposes of this case.

Where I have declared that I have taken judicial notice of some fact or event, you must accept that fact as true.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. Furthermore, if a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact.

Any evidence as to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.  Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. In some cases, a deposition may be played for you on videotape. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:40 (6th ed.) (adapted).

**Joint Instruction No. 10:**      **What is Not Evidence**

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers; questions and objections of the lawyers; testimony that I instruct you to disregard; and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:44 (6th ed.).

**Joint Instruction No. 11:**      **Credibility of Witnesses**

As the trial proceeds, the parties in this action will present you with the evidence they will use to make their cases. They will ask you to draw very different conclusions about various factual issues in the case.

In deciding the facts, you will have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

In this process, ladies and gentlemen, you are the sole judges of the credibility of the witnesses and the weight their testimony deserves. It is your job to decide how believable each witness was in her or her testimony.

How do you determine where the truth lies? You will watch each witness testify. Everything a witness says or does on the witness stand counts in your determination. How did the witness impress you? Did he/she appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his/her demeanor -- that is, his/her carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he/she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying. You should consider the opportunity the witness had to see, hear, and know the things about which he/she testified, the accuracy of his/her memory, his/her candor or lack of candor, the reasonableness and probability of his/her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

To repeat, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 101:43; 105:01 (6th ed.); 4 Modern Fed. Jury Instr.-  Civil 76.01, 76-1 -- 76-4; *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952)  ("[Jury] should [] take into consideration the whole nexus of sense impressions which they get  from a witness").

**Joint Instruction No. 12: Credibility of Witnesses No Inference from Filing Suit**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit.

The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**SOURCE:** Modern Fed. Jury Instr.- Civil 3.6

### III.    <u>CONCLUDING INSTRUCTIONS</u>

**Joint Instruction No. 13:  Duties of Jurors**

Members of the jury, now that the evidence is in and counsel have summed up their contentions, the time has come for us to perform our respective functions in the administration of justice in this case.

As I stated to you at the outset, it is my duty to instruct you as to the principles of law to be followed, and it is your duty to accept those instructions as they are given by the Court and apply them to the evidence in this case.  In performing your function, you should not single out any one instruction as stating the law, but, rather, should consider these instructions as a whole.

The instructions to you will consist of three sections.  First, I will give you some general instructions applicable in every case.  Second, I will instruct you regarding the specific issues that will need to be decided by you in this case relating to alleged discrimination and damages.  Finally, I will give you some instructions regarding the conduct of your deliberations.

In defining the duties of the jury, let me first give you a few general rules:

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them to be from the evidence in the case.

The questions that you must decide will be submitted to you in the form of a special verdict consisting of specific questions for you to answer.  You must answer these questions by applying the facts as you find them to be.  I shall give to you the rules of the law that apply to these questions. You must apply them in arriving at your answers.

You are not to single out any one instruction alone as stating the law, but, instead, must consider the instructions as a whole. Nor are you to be concerned with the wisdom of any rule of law stated by me. You are obligated to follow the law.

Nothing I say in these instructions is to be taken as an indication that the Court has any opinion, one way or the other, about the facts of the case. It is not my function to determine the facts, but rather that is your function.

You must perform your duties as jurors without bias or prejudice as to any party. You must follow the law as I give it to you, whether you agree with it or not. The law does not permit you to be governed by sympathy, prejudice, or public opinion. You are to treat all parties equally. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict.

**SOURCE:** O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §103.01 (5th ed. 2000).

**Joint Instruction No. 14:  Direct and Circumstantial Evidence**

There are, generally speaking, two types of evidence from which you may properly find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence: the proof of a chain of circumstances from which another fact may be inferred.

To illustrate what I mean by circumstantial evidence, let me give you an example. Assume that when you entered the courthouse this morning the sun was shining brightly outside and it was a clear day. In the courtroom, however, the shades are drawn, and you cannot see outside. As the trial progresses, people start entering the courtroom wearing raincoats and carrying dripping umbrellas. From these facts, you might reasonably infer that it has begun to rain, even though you cannot see out the window and do not know by direct observation or evidence that it is raining.

Having told you that the law recognizes both direct and circumstantial evidence, let me also instruct you that the law makes no distinction between the weight to be given to either direct or circumstantial evidence.

As I said before, which of the admitted evidence you will accept as authoritative is up to you. However, you may consider only what has been admitted as evidence in this trial – things that the Court has ruled inadmissible may not be considered. And, of course, it is for you to interpret the evidence.

**SOURCE:** 4 L. Sand, *et al*, <u>Modern Federal Jury Instructions</u>, §74-2 (2001) (modified); 4 Modern Federal Jury Instructions-Civil P. 74-2 (2019).

**Joint Instruction No. 15:    Inferences**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience. "Inferences" are deductions or conclusions that reason, and common sense lead you to draw from facts established by the evidence in the case.

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact. An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw— but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 75.01. 75-1; *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 526 (1956) ("The very essence of  [the jury's] function is to select from among conflicting inferences and conclusions that which it   considers most reasonable.  Fact finding does not require mathematical certainty.  Jurors  supposed to reach their conclusions on the basis of common sense, common understanding and  fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of  circumstances from which inferences can fairly be drawn."); *Wilkins v. American Export  Isbrandtsen Lines, Inc.*, 446 F.2d 480, 484 (2d Cir. 1971) ("Of course, in some situations proof  of one fact provides a basis for inferring another").

**Joint Instruction No. 16:      Credibility of Witnesses**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in her or her testimony. You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. It must also be obvious to you that both sides cannot be true, and this is where you play your role as jurors. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the

testimony. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was her or her demeanor--that is, her or her behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

As I mentioned before the trial began, you should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. In other words, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict.

You should consider the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case, the opportunity the witness had to see, hear, and know the things about which he/she testified, the accuracy of his/her memory, his/her candor or lack of candor, his/her intelligence, and the reasonableness and probability of his/her testimony. Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. Always remember that you should use your common sense, your good judgment and your own life experience. After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

Please keep in mind that the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01, 76-1.

**Joint Instruction No. 17:     Prior Inconsistent Statements**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness' present testimony. Evidence of a prior inconsistent statement or conduct is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement is before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with her trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves. It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony. If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed.); 4 Modern Fed Jury Instr.-Civil 76.01, 76-5; *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 44 (2d Cir. 2000) ("To the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility. The weighing of the evidence is a matter for the trier of fact") (internal citations omitted).

**Joint Instruction No. 18:    Multiple Defendants**

Although there are multiple Defendants in this case, it does not follow that if one is liable, then the others are liable as well. Each defendant is entitled to fair, separate, and individual consideration of the case without regard to your decision as to any other defendant. If you find that only one defendant is liable, you must impose liability upon that one defendant.

## IV.    CLAIMS & DAMAGES/SUBSTANTIVE LAW – PLAINTIFF'S VERSION

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the stand, the physical facts and all legitimate inferences.

Plaintiff claims that Defendants discriminated and retaliated against him based on a disability under the Americans with Disabilities Act, the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff also claims that Defendants Lazarro and Mellynchuk are liable for aiding and abetting and supervisory liability. Specifically, Plaintiff claims that *first*, Defendants failed to provide him a reasonable accommodation, *second,* that Defendants failed to engage in an interactive dialogue related to his accommodation, and *third,*

that Defendants terminated Plaintiff for having a disability and/or for attempting to secure a reasonable accommodation.

Defendants deny all of Plaintiff's claims and assert that the actions they took were for legitimate, non-discriminatory, non-retaliatory business reasons..

**SOURCE:**    O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §175.1 (6th ed. 2014)

## IV. <u>CLAIMS & DAMAGES/SUBSTANTIVE LAW – DEFENDANTS' VERSION</u>

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the stand, the physical facts and all legitimate inferences.

Plaintiff claims that Defendants discriminated and retaliated against him based on a disability under the Americans with Disabilities Act, the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff also claims that Defendants Lazzaro and Mellynchuk are liable for aiding and abetting and supervisory liability.

Defendants deny all of Plaintiff's claims and assert that the actions they took were for legitimate, non-discriminatory, non-retaliatory business reasons because Plaintiff was unable to perform the essential functions of his job – Plaintiff could no longer provide direct patient care and safety. The laws under which Plaintiff makes these claims are the New York State Human Rights Law ("SHRL"), the New York City Human Rights Law ("CHRL"), and the Americans with Disabilities Act ("ADA").

Let me remind you that to find for the Plaintiff on his claims, you must find that he has met his burden to prove every element of that claim by a preponderance of the credible evidence.

**SOURCE:** O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §175.1 (6th ed. 2014)

**Joint Instruction 19: Disability Discrimination – PLAINTIFF'S VERSION**

Under the Americans with Disabilities Act, New York State Human Rights Law and the New York City Human Rights Law, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must establish facts demonstrating that: (1) his employer is covered by Americans with Disabilities Act, the New York State Human Rights Law and the New York City Human Rights Law; (2) he has a disability within the meaning of the Americans with Disabilities Act, New York State Human Rights Law and the New York City Human Rights Law; (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.

**SOURCE:**    Authority: *McMillan v. City of New York,* 711 F.3d 120, 125 (2d Cir. 2013); *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009); Kinneary v. City of New York, 601 F.3d 151, 155-56 (2d. Cir. 2010); (elements for finding discrimination under NYSHRL and NYCHRL track the ADA); *Chernoff v. City of New York,* 2008 U.S. Dist. LEXIS 77869 at *21, n.8 (E.D.N.Y. Sept. 10, 2008) (claims under the New York City Human Rights Law are analyzed similarly to claims under the ADA).

I will now proceed to explain the elements of each claim. Let me remind you again that to find for the Plaintiff on his claims, you must find that he met his burden to prove every element by a preponderance of the evidence.

The parties do not dispute the first two elements of Plaintiff's claim. However, there is a dispute as to (1) whether Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodation and (2) whether Plaintiff was terminated due to his disability. To establish that he is a qualified individual, the first thing Plaintiff must prove is that

he is otherwise qualified for the position. This means that Plaintiff has the requisite skill, experience, education, and other job-related requirements of the employment position involved in this case. If he cannot satisfy this standard, then Plaintiff is not a qualified individual, even if the reason he is not qualified is because of the disability.

To make this determination, you will have to determine what Defendants motivations were in terminating Plaintiff and whether there existed a reasonable accommodation.

**SOURCE:**    5-88A Modern Fed. Jury Instructions- 88A-13.

**Joint Instruction 19: Disability Discrimination – DEFENDANTS' VERSION**

Under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL"), Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must establish facts demonstrating that: (1) his employer is covered by the ADA, SHRL, and/or CHRL; (2) he has a disability within the meaning of the ADA, SHRL, and/or CHRL; (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.

**SOURCE:** Authority: *McMillan v. City of New York,* 711 F.3d 120, 125 (2d Cir. 2013); *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009); *Kinneary v. City of New York*, 601 F.3d 151, 155-56 (2d. Cir. 2010) (elements for finding discrimination under SHRL and CHRL track the ADA); *Chernoff v. City of New York,* 2008 U.S. Dist. LEXIS 77869 at *21, n.8 (E.D.N.Y. 2008) (claims under the CHRL are analyzed similarly to claims under the ADA).

I will now proceed to explain the elements of each claim. Let me remind you again that to find for the Plaintiff on his claims, you must find that he met his burden to prove every element by a preponderance of the evidence.

The parties do not dispute the first two elements of Plaintiff's claim. However, there is a dispute as to (1) whether Plaintiff was qualified to perform the essential functions of his job with

or without reasonable accommodation and (2) whether Plaintiff was terminated due to his disability. To establish that he is a qualified individual, the first thing Plaintiff must prove is that he is otherwise qualified for the position. This means that Plaintiff has the requisite skill, experience, education, and other job-related requirements of the employment position involved in this case. If he cannot satisfy this standard, then Plaintiff is not a qualified individual, even if the reason he is not qualified is because of the disability.

**SOURCE:** 5-88A Modern Fed. Jury Instructions- 88A-13.

If you find that the Plaintiff was qualified for the position, then the next step is to determine whether he has proven by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation. Under the ADA and SHRL, the Plaintiff must prove, by the preponderance of the evidence, that some accommodation exists that would allow him to safely perform the essential functions of his employment as an clinical staff physician in the ophthalmology department /eye surgeon and Chief of the Ophthalmology Center. The CHRL also requires that Plaintiff be able to perform the essential functions of his job as an Eye surgeon and Chief of the Ophthalmology Center with or without accommodations. However, under the CHRL, it is Defendants' burden to show that Plaintiff was unable to perform the essential functions of his job, with or without a reasonable accommodation, or posed a direct threat to his or others' safety.

In order to make this determination, you will need to determine what the essential functions of the employment position were. The "essential functions of an employment position" are the basic duties of a job that a person must be able to perform in order to hold a particular position.

**SOURCE:** 5-88A Modern Fed. Jury Instructions-88A-15.

If a Plaintiff is unable to perform the essential functions of his job, he cannot be a victim of disability discrimination. Plaintiff bears the burden of production and proof on the issue of whether he was <u>otherwise</u> qualified for the job in question.

**SOURCE:** *McDonnell v. Schindler Elevator Corp.*, 618 F. Appx. 697, 698 (2d Cir. 2015) (SHRL); *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (ADA); *Urena v. Swiss Post Solutions, Inc.*, 2016 U.S. Dist. LEXIS 128856, at *6 (S.D.N.Y. 2016) (CHRL) (citing *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010)); *Van Vorst v. Lutheran Healthcare*, 2021 WL 6101474, at *1 (2d Cir. 2021).

## 1.    Performing the Essential Functions of His Job

The term "essential functions" means the fundamental job duties of the employment position a Plaintiff held. The term does not include the marginal functions of the position. When deciding which job functions are essential, courts generally give substantial deference to the employer's views, and so should you. Additionally, you should consider the following factors: the employer's judgment regarding which functions are essential; written job descriptions; the employment contract; the amount of time spent on the job performing the function; the consequences of not requiring the person to perform the function; the work experience of persons who have held the job; the current work experience of persons in similar jobs; whether the reason the position exists is to perform the function; whether there are a limited number of employees available among whom the performance of the function is to be distributed; whether the function is highly specialized and the individual in the position was hired for her expertise or ability to perform the function. Merely because Plaintiff performed other tasks in addition to those set forth in the job description does not mean that the tasks stated in the job description are not essential functions for the position.

Regularly attending work on-site is an essential function of virtually every job, especially for jobs that are interactive.

**SOURCE:** *Frantti v. New York*, 850 F. App'x 17, 20 (2d Cir. 2021); *Vitti v. Macy's Inc.*, 758 F. App'x 153, 157 (2d Cir. 2018); *Lazzari v. NY City Dept. of Parks & Rec.*, 751 F. App'x 100, 103

(2d Cir. 2018); *Vandenbroek v. PSEG Power CT LLC*, 356 Fed. App'x 457, 460 (2d Cir. 2009); *Hunt-Watts v Nassau Health Care Corp*., 43 F. Supp. 3d 119, 130 (E.D.N.Y. 2014); *Aquinas v. Federal Exp. Corp*., 940 F. Supp. 73, (S.D.N.Y. 1996).

When evaluating whether the Plaintiff is qualified to perform the essential functions of his job, this includes a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace. A "direct threat" is a significant risk of substantial harm to the health or safety of himself or others that cannot be eliminated by a reasonable accommodation. The risk can only be considered when it poses a significant risk, which means a high probability of substantial harm; a speculative or remote risk is insufficient. If Plaintiff constitutes a direct threat to himself or others then he is unqualified for the position if the threat cannot be eliminated by a reasonable accommodation.

It is Defendants' burden to show that Plaintiff posed a direct threat to his or others' safety. If you find that Defendants established, by a preponderance of the credible evidence, that Plaintiff was unable to competently perform the essential functions of a clinical staff physician in the ophthalmology department /eye surgeon and Chief of the Ophthalmology Center, with or without an accommodation and/or threatened patient safety, you must find for Defendants, and your inquiry ends there.

**SOURCES:** 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.2(r); *Lovejoy-Wilson v NOCO Motor Fuel, Inc*., 263 F3d 208 (2d Cir 2001); *Krasner v City of NY*, 2013 U.S. Dist. LEXIS 136534, at *33-37 (S.D.N.Y. 2013); "NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability," available at www1.nyc.gov/assets/cchr/downloads/pdf/NYCCHR_LegalGuide-DisabilityFinal.pdf (last visited on May 30, 2023) at pp. 43-45;

2. **Adverse Employment Action**

Finally, there is a dispute as to whether Plaintiff suffered an adverse employment action because of his disability.

To satisfy this element, the Plaintiff must prove by a preponderance of the evidence that the disability was a determinative factor in the decision to terminate Plaintiff. It need not have been the sole factor, but it must have been the decisive factor, meaning that <u>but for</u> the consideration of the Plaintiff's disability, the defendant would not have made the same employment decision.

In order for the disability to have been a determinative factor in a Defendant's decision, the defendant must have known that the Plaintiff had a disability. This means that the person who made the decision to take the adverse action knew that Plaintiff had a disability.

A delay in processing an accommodation request, without more, is not an actionable adverse employment action. For a delay in processing an accommodation request to be actionable, Plaintiff must prove by a preponderance of the evidence that the employer had a discriminatory motive behind the delay. Delays due to bureaucratic inefficiency or a need to coordinate an accommodation request across multiple departments is insufficient to support a claim of discriminatory intent.

**SOURCE:** 5-88A Modern Fed. Jury Instructions-Civil 88A-20; *Perez v. City of NY*, 2020 U.S. Dist. LEXIS 46906, at *39-40 (S.D.N.Y. 2020), *aff'd*, 843 Fed. Appx. 406 (2d Cir. 2021); *Tillman v. NY City Dept. of Human Resources Admin.*, 2022 U.S. Dist. LEXIS 53625, at *14 (S.D.N.Y. 2022) (collecting cases); *Choi v. Liberty Mut. Ins. Co.*, 2021 U.S. Dist. LEXIS 41837, at *25 (E.D.N.Y. 2021); *Sosa v. N.Y. City Dep't. of Educ.*, 368 F. Supp. 3d 489, 512 (E.D.N.Y. 2019)

If the Plaintiff has produced evidence to support his allegation that an adverse employment action was taken against him and that it was caused by his disability, the Defendants must produce evidence of a legitimate, non-discriminatory reason for their employment decision. A non-discriminatory reason is any reason or explanation which is unrelated to the Plaintiff's disability.

Let me explain this further. In this case, if you find that the Plaintiff's evidence has raised an inference of discrimination, Defendants can rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for their actions. In considering the non-discriminatory

reasons put forth by Defendants, you are not to second-guess the decision or otherwise substitute your judgment for that of the Defendants. The question is not whether the Defendants showed poor or erroneous judgment. You are not to judge the Defendants' wisdom. The employer is entitled to set its own expectations and requirements for what constitutes satisfactory performance.

Even if Plaintiff has shown that Defendants misjudged Plaintiff or were unfair or not nice, or even that Defendants articulated reasons for making the employment decisions that were made concerning Plaintiff were ill-advised, this is not sufficient for Plaintiff to meet his burden to prove that Defendants' explanation is a pretext for discrimination. An employer is entitled to make an employment decision for a good reason, a bad reason, or no reason at all, so long as the decision is not motivated by the Plaintiff's disability. The anti-discrimination statutes in this case do not make employers liable for doing ill-advised or even wicked things; they make employers liable for discriminating against employees on account of an employee's disability.

Here, the Defendants assert that they took actions against the Plaintiff, not because of Plaintiff's disability, but for nondiscriminatory reasons—Plaintiff was unable to perform the essential functions of the job and never returned to work medically cleared to perform his job. If you find that is true, that would be a complete defense. But if you find that the asserted reason is just a pretext, you may, if you wish, consider whether the real reason was discrimination on the basis of disability. Remember, however, that not all pretexts are designed to conceal discrimination and that it is Plaintiff's burden to satisfy you, by a preponderance of the evidence, that the adverse action would not have been taken, except for the Defendants' consideration of the Plaintiff's disability.

**SOURCE:** 5-88A Modern Fed. Jury Instructions-Civil 88A-22.

**Joint Instruction No. 20:    Failure    to    Provide    a    Reasonable    Accommodation–PLAINTIFF'S VERSION**

Under the Americans with Disabilities Act, New York State Human Rights Law and the New York City Human Rights Law, to prevail on a discrimination claim based on an employer's failure to provide a reasonable accommodation, a plaintiff must prove four elements. *First*, the employer is subject to the statute under which the claim is brought. *Second*, the plaintiff is an individual with a disability within the meaning of the statute in question. *Third*, that, with or without reasonable accommodation, the plaintiff could perform the essential functions of the job." And*, fourth*, that the employer had notice of the plaintiff's disability and failed to provide such accommodation.

**SOURCE:**    Rodriguez v. Atria Senior Living Group, Inc., 887 F. Supp. 2d 503, 510; Authority: *McMillan v. City of New York,* 711 F.3d 120, 125 (2d Cir. 2013); *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009); Kinneary v. City of New York, 601 F.3d 151, 155-56 (2d. Cir. 2010); (elements for finding discrimination under NYSHRL and NYCHRL track the ADA); *Chernoff v. City of New York,* 2008 U.S. Dist. LEXIS 77869 at *21, n.8 (E.D.N.Y. 2008) (claims under the New York City Human Rights Law are analyzed similarly to claims under the ADA).

The parties do not dispute the first two elements or element four of Plaintiff's claim. However, there is a dispute as to whether Plaintiff could perform the essential job functions with or without a reasonable accommodation

**SOURCE:**    5-88A Modern Fed. Jury Instructions- 88A-13.

You must determine whether Plaintiff has proven by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation. Under the ADA and SHRL, the Plaintiff must prove, by the preponderance of the evidence, that some accommodation exists that would allow him to perform the essential functions of his employment as Chief of the Ophthalmology Center. The CHRL also requires that Plaintiff be able to perform the essential functions of his job as Chief of the

Ophthalmology Center with or without accommodations. However, under the CHRL, it is Defendants' burden to show that Plaintiff was not qualified to perform the essential functions of his job with or without a reasonable accommodation.

A reasonable accommodation may include, among other things, working from home on a temporary or full- time basis, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position.

In order to make this determination, you will need to determine what the essential functions of the employment position were. The "essential functions of an employment position" are the basic duties of a job that a person must be able to perform in order to hold a particular position.

**SOURCE:**     5-88A Modern Fed. Jury Instructions-88A-15.

If Defendants show that Plaintiff was unable to perform the essential functions of his job with an accommodation, he cannot be a victim of disability discrimination. Plaintiff bears the burden of production and proof on the issue of whether he was <u>otherwise</u> qualified for the job in question.

**SOURCE:** *McDonnell v. Schindler Elevator Corp.*, 618 F. Appx. 697, 698 (2d Cir. 2015) (SHRL); *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (ADA); *Urena v. Swiss Post Solutions, Inc.*, 2016 U.S. Dist. LEXIS 128856, at *6 (S.D.N.Y. 2016) (CHRL) (citing *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010)); *Van Vorst v. Lutheran Healthcare*, 2021 WL 6101474, at *1 (2d Cir. 2021).

**Joint Instruction No. 20:     Failure to Accommodate Claim – DEFENDANTS' VERSION**

Plaintiff claims that Defendant failed to provide him with a reasonable accommodation in violation of the ADA, the SHRL, and the CHRL.

In order to establish a claim for failure to accommodate under the ADA, the SHRL, and the CHRL, Plaintiff must establish by a preponderance of the evidence that (1) he has a disability as defined by those statutes; (2) Defendant had notice of the disability; (3) with reasonable

accommodation he could perform the essential functions of his job; and (4) Defendant refused to make such accommodation. The parties only dispute elements three and four.

A reasonable accommodation may include, among other things, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position. An accommodation is not reasonable if the accommodation would require the employer to eliminate an essential job function. An employer is not required to create a new job or position as an accommodation; such an accommodation is unreasonable as a matter of law. Similarly, where the employee's requested accommodation would require the employer to hire multiple employees to do the job of a single employee, such a proposed accommodation is not reasonable. Where on-site attendance is an essential function of a job, any purported accommodation permitting an employee's continued absence is not a reasonable one.

Thus, under the ADA, and the SHRL, Plaintiff must prove by a preponderance of the evidence that he was qualified and able to perform his job. Moreover, under the ADA, and the SHRL, the Plaintiff must establish that some accommodation exists that would allow him to safely perform the essential functions of his employment. If Plaintiff is seeking reassignment to a lighter duty position, has the burden of identifying the existence of a vacant position that is a suitable replacement. An employer is not required to reassign an employee is there is no vacant position available.

However, unlike the aforementioned State and Federal Laws, under the CHRL it is Defendant's burden to show that Plaintiff was not qualified to perform the essential functions of his job or, otherwise, posed a direct threat to his own or others' safety.

If you find that the Plaintiff was qualified, as I explained that term to you, and that the Plaintiff was able to fulfill all of the essential functions of the job without any accommodation at the time of

the adverse job action, then he is a qualified individual. If he could not fulfill the essential functions of the job, he is not a qualified individual. An employee who is not medically cleared to return to work is incapable of performing the essential functions of his or her job. If you do find that the Plaintiff was otherwise qualified but unable to fulfill all of the essential functions of the job without accommodation, then you must consider whether there were reasonable accommodations that the Plaintiff requested and that the Defendant could have granted that would have enabled the Plaintiff to fulfill the essential functions which he could not otherwise fulfill.

A reasonable accommodation must be reasonable both in terms of cost and efficiency. It must not create an undue hardship in the conduct of the employer's business. Thus, you may consider the financial and administrative burdens that would be placed on the employer if required to make a particular accommodation.

A disabled employee has the obligation to suggest reasonable accommodations to the employer. An employer is not required to grant every request by an employee; an employee is not entitled to the accommodation of his or her choice. Rather, an employer is required to make only those reasonable accommodations that allow the employee to function in the position. An employee may not require an employer to accept a particular accommodation if another one will accomplish the necessary result. Rather, an employer must engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested.

Similarly, an employer is not required to accommodate an employee's difficulties in commuting. Similarly, an employer is not required to make an accommodation that is primarily for the employee's personal benefit and not job-related. The purpose of an accommodation is to permit an employee with a disability to perform his or her job duties.

**SOURCE:** 29 C.F.R. § 1630.2(n); Diamond Mod. Fed. Jury Instructions Civil 11.10 (2022); *Phillips v. City of New York*, 66 A.D.3d 170, 176-177 (1st Dept. 2009); *Hosking v. Memorial*

*Sloan-Kettering Cancer Ctr.,* 126 N.Y.S. 3d 98, 102 (1st Dept. 2020); *Borkowski v. Valley Central School Dist.*, 63 F.3d 131, 137 (2d Cir. 1995) *accord Mendes v. Jednak*, 92 F. Supp.2d 58, 65 (S.D.N.Y. 2000); *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991); *D'Amico v. City of N.Y.*, 132 F.3d 145, 151 (2d Cir. 1998); *McBride v. BIC Consumer Prod. Mfg. Co. Inc.*, 583 F.3d 92, 98 (2d Cir. 2009); *Quintana v. Sound Distrib. Corp*, 1997 U.S. Dist. LEXIS 934, *1 (S.D.N.Y. 1997); *Pugliese v. Verizon N.Y., Inc.*, 2008 U.S. Dist. LEXIS 52677, *48 (S.D.N.Y. 2008); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006); *Makinen v. City of New York*, 53 F. Supp. 3d 676, 694 (S.D.N.Y. 2014) (*quoting* 42 U.S.C. § 12113(b)); *McMillan*, 711 F.3d at 126 (citing *McBride*, 583 F.3d at 97 and *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137- 38 (2d Cir. 1995)); *Krasner v. City of New York*, 2013 U.S. Dist. LEXIS 136534, *33-37 (S.D.N.Y. 2013) (citing 29 C.F.R. § 1630.2(r)); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (quoting *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 432 (6th Cir. 1999)); *Adams v. Rochester Gen. Hosp.*, 977 F. Supp. 226, 233-34 (W.D.N.Y. 1997) (quoting *Altman v. New York City Health and Hospitals Corp.*, 903 F. Supp. 503 (S.D.N.Y. 1995), *aff'd*, 100 F.3d 1054 (2d Cir. 1996)); *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987); *Frantti v New York*, 850 F. App'x 17, 20 (2d Cir 2021); *Lazzari v. NY City Dept. of Parks & Rec.,* 751 F. App'x 100, 103 (2d Cir. 2018); *Stevens v Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017); *Wenc v. New London Bd. of Educ.*, 702 F. App'x 27, 31 (2d Cir. 2017); *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231(2d Cir. 2017); *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 181 (2d Cir. 2016); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir.1999); *DeAngelo v. MAXIMUS/NY Medicaid Choice*, 2022 U.S. Dist. LEXIS 137442, at *69 (S.D.N.Y. 2022); *Perkins v. United States Dept. of the Treasury*, 2022 U.S. Dist. LEXIS 708, at *33 (S.D.N.Y. 2022); *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 134 (E.D.N.Y. 2014); *Exarhakis v Visiting Nurse Serv.*, 2006 U.S. Dist. LEXIS 5360, at *23 (E.D.N.Y. 2006); *Romanello v. Intesa Sanpaolo, S.p.A.,* 22 N.Y.3d 881 (N.Y. 2013); *Pinto v. NY City Admin. for Children's Servs.*, 2018 U.S. Dist. LEXIS 154778, at *25-26 (S.D.N.Y. 2018); *Raffaele v. City of N.Y.*, 2004 U.S. Dist. LEXIS 17786, at *51 (E.D.N.Y. 2004) (collecting cases); *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) ; *Giles v. NBC Universal, Inc.*, 2011 U.S. Dist. LEXIS 106171, at *15-16 (S.D.N.Y. 2011); "NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability," available at www1.nyc.gov/assets/cchr/downloads/pdf/NYCCHR_LegalGuide-DisabilityFinal.pdf (last visited on August 15, 2024) at pp. 43-45.

**1. Whether Defendants Refused to Grant a Reasonable Accommodation**

If Plaintiff successfully proves, by a preponderance of the evidence, that he was disabled, and qualified to perform the job, then you must move onto the final element of Plaintiff's failure to accommodate claim. Here you must decide whether Defendant refused to grant him an accommodation, including by failing to proactively engage in the interactive process. If you find that Defendant refused to grant Plaintiff an accommodation, you must then determine whether granting the accommodation would have caused the employer to suffer an undue hardship.

The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both Defendant and Plaintiff. The ADA, the SHRL, and the CHRL requires the parties to engage in an interactive process where the parties work together to determine if and how the employee's disability can be reasonably accommodated.

The interactive process simply requires an employer to investigate the employee's accommodation request and determine its feasibility. An employer may engage in the interactive process by, among other things, requesting information about the condition and what limitations the employee has. The employer must also show some sign of having considered the employee's request. Where an employer is responsible for a breakdown in that process, the employer is liable for failure to provide a reasonable accommodation.

Similarly, where an employee is responsible for the breakdown of that interactive process, the employee may not recover for a failure to accommodate. This is because an employee seeking an accommodation must participate in the interactive process to help the employer identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

To find that Defendant failed to accommodate Plaintiff under the ADA and the SHRL, Plaintiff must prove that it was more likely than not that some reasonable accommodation of his disability was possible. A reasonable accommodation must be reasonable both in terms of cost and efficiency. Under the CHRL, Defendant has the burden to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. An undue hardship is an action requiring significant difficulty or expense. For the ADA, and the CHRL claims, Defendant has the burden of proving by a preponderance of the evidence that an accommodation would constitute an undue hardship. For

the SHRL, Plaintiff has the burden of proving by a preponderance of the evidence that an accommodation would not constitute an undue hardship. In making this determination, you may consider the following factors: the nature and cost of the accommodation; the size and nature of Defendant's business, and the financial resources available to it; and the impact of the accommodation on the operation of Defendant's business. Thus, you may consider the burden that Defendant may have incurred had they granted an accommodation to Plaintiff.

Finally, an employer is not required to grant every request by an employee; it is only required to make reasonable accommodations that allow the employee to function in the position. But in order to be a reasonable accommodation, the accommodation must be effective and therefore enable the employee to perform the essential functions of the position.

A leave of absence for a finite period may be a reasonable accommodation if an employee shows that leave will enable him to perform the essential functions of the job when he returns to work. However, a request for an indefinite leave of absence is not a reasonable accommodation.

**SOURCE:** *Groff v. DeJoy*, 600 U.S. 447, 470 (2023); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000); *Lovejoy-Wilson*, 263 F.3d at 219; *Elmessaoudi v. Mark 2 Rest. LLC*, 2016 WL 4992582, at *8 (S.D.N.Y. 2016) (CHRL); *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013); *Jackson v. City of Chicago,* 414 F.3d 806, 813 (7th Cir. 2005); 5 Mod. Fed. Jury Instr.-Civil § 88A-17 (2025); *McBride*, 583 F.3d at 101 ("The employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible"); *Williams v. MTA Bus Co.*, 44 F.4th 115, 137 (2d Cir. 2022) ("[T]he NYCHRL directs that the plaintiff's qualification for the position is not an element of a prima facie case, but rather may be disproven by the employer as an affirmative defense") (citing N.Y.C. Admin. Code § 8-107(15)(b)); *Jacobsen v. New York City Health and Hosps. Corp.*, 22 N.Y.3d 824, 835 (N.Y. 2014); *Baker v. MTA Bus Company*, 2023 WL 4896686, at *30 (S.D.N.Y. 2023) ("[T]he NYCHRL 'places the burden on the employer' and *not* the plaintiff to demonstrate that an accommodation requested by the plaintiff would not be reasonable") (quoting *Lazzari v. N.Y.C. Dep't of Parks & Recreation*, 751 F. App'x 100, 102 (2d Cir. 2018); *Elmessaoudi*, 2016 WL 4992582, at *8 (an employer may engage in the interactive process by "offering and discussing available alternatives when the request is too burdensome") (citations omitted); *Velez*, 2021 WL 1873233, at *7; *Greenbaum v. N.Y.C. Transit Auth.*, 2022 WL 3347893, at *5 (2d Cir. 2022) (quoting N.Y.C. Admin. Code § 8-107(28)(a)); 42 U.S.C. § 12111(10)(A); *Pugliese*, 2008 U.S. Dist. LEXIS 52677, at *44 (employer's burden to show undue hardship under ADA); *Arazi v. Cohen Bros. Realty*

*Corp.*, 2022 WL 912940, at *6 (S.D.N.Y. 2022) (employer's burden to show undue hardship under CHRL); NY PJI I. New York State Human Rights Law C.2 (differences in undue hardship burden between SHRL and CHRL); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015) ("The hallmark of a reasonable accommodation is effectiveness."); 5-88A Modern Fed. Jury Instructions- 88A-16; *Phillips v. City of New York*, 66 A.D.3d 170, 176-177 (1st Dept. 2009); *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 181 (2d Cir. 2016); *DeAngelo v. MAXIMUS/NY Medicaid Choice*, 2022 U.S. Dist. LEXIS 137442, at *69 (S.D.N.Y. 2022); *Graves v. Finch Pruyn & Co., Inc.*, 353 F. App'x 558, 560-61 (2d Cir. 2009); *Smith v N. Shore-Long Is. Jewish Health Sys.*, 286 F. Supp. 3d 501, 524 (E.D.N.Y. 2018); *Romanello v. Intesa Sanpaolo, S.p.A.,* 22 N.Y.3d 881 (N.Y. 2013); *Exarhakis v Visiting Nurse Serv.*, 2006 U.S. Dist. LEXIS 5360, at *23 (E.D.N.Y. 2006); Cosme v. Henderson, 287 F3d 152, 158 (2d Cir. 2002) ("the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends").

**Joint Instruction 21:   Failure to Engage in an Interactive Dialogue – PLAINTIFF'S VERSION[5]**

Under the law, when an employee notifies their employer of a disability and requests a reasonable accommodation—or when the need for accommodation is otherwise obvious—the employer is required to engage in a good-faith, interactive process with the employee to identify a reasonable accommodation that would allow the employee to perform the essential functions of their job. This is referred to sometimes as a "cooperative dialogue" between an employee and their employer.

This process must be individualized and interactive, meaning it involves a dialogue between the employer and employee. The employer cannot simply dismiss or ignore the request. The law does not permit an employer to make assumptions or act unilaterally without attempting a real conversation with the employee about possible accommodations

The cooperative dialogue involves good faith written or oral **dialogue** concerning the person's accommodation needs, potential accommodations that may address those needs, and the

---

[5] Defendants dispute the inclusion of this charge because it is not a separate cause of action under the ADA and Plaintiff has not plead a separate cause of action for CHRL failure to engage in cooperative dialogue.

difficulties that such accommodations may pose for the covered entity, The failure to engage in a cooperative dialogue is independently actionable under the NYCHRL. The dialogue may involve a meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employees request, and offering and discussing available alternatives when the request is too burdensome.

**SOURCE:** N.Y.C. Admin. Code § 8-107(28)(a); *Cangro v. N.Y.C. Dep't of Fin.*, 2024 U.S. Dist. LEXIS 148244, *18-19 (2024); *Heiden v. New York City Health & Hosps. Corp.*, No. 20-CV-10288 (LJL), 2023 U.S. Dist. LEXIS 5583, 2023 WL 171888, at *33 (S.D.N.Y. Jan. 11, 2023); Goldman v. Sol Goldman Invs. LLC, 2022 U.S. Dist. LEXIS 140927, *12-13.

**Joint Instruction 21:    Failure to Engage in Cooperative Dialogue – DEFENDANTS' VERSION[6]**

The CHRL contains a separate cause of action for a failure to engage in a cooperative dialogue. Plaintiff must prove, by a preponderance of the evidence, that he requested an accommodation, and that Defendants refused to engage in a cooperative dialogue with Plaintiff. The appropriate, reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the employee with a disability.  Thus, the CHRL require the parties to engage in an interactive process where the parties work together to determine if and how the employee's disability can be reasonably accommodated. Here, the parties agree that Plaintiff requested an accommodation. So, you must decide if Defendants refused to engaged in a cooperative dialogue with Plaintiff about his proposed accommodation.

---

[6] Defendants dispute the inclusion of this charge because it is not a separate cause of action under the ADA and Plaintiff has not plead a separate cause of action for CHRL failure to engage in cooperative dialogue.

The interactive process simply requires an employer to investigate the employee's accommodation request and determine its feasibility. An employer may engage in the interactive process by, among other things, requesting information about the condition and what limitations the employee has. The employer must also show some sign of having considered the employee's request. The CHRL requires only that Defendants engage in an interactive process with Plaintiff; it does not require that Plaintiff be satisfied with that process or that the process result in the Plaintiff's preferred accommodation.

The employer must also show some sign of having considered the employee's request. Where an employer is responsible for a breakdown in that process, the employer is liable for failure to provide a reasonable accommodation.

Similarly, where an employee is responsible for the breakdown of that interactive process, the employee may not recover for a failure to accommodate. This is because an employee seeking an accommodation must participate in the interactive process to help the employer identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. If Plaintiff accepts an accommodation, Defendants cannot be held liable for an alleged failure to continue a closed dialogue.

**SOURCES:** *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (cleaned up); *Sullivan v Natl. Express LLC*, 2023 U.S. Dist. LEXIS 171587, at *36 (S.D.N.Y. 2023) ("Several courts have found that, if a Plaintiff accepts an accommodation, Defendants cannot be held liable for an alleged failure to continue a closed dialogue"); *Velez v. Girraphic LLC*, 2021 WL 1873233, at *7 (S.D.N.Y. 2021) (The CHRL "requires an employer engage in a cooperative dialogue with the individual so that they can agree on an appropriate reasonable accommodation"); *Johnson v. L'Oréal United States*, 2021 U.S. Dist. LEXIS 188461, at *51 (S.D.N.Y. 2021); *Elmessaoudi v. Mark 2 Restaurant LLC*, 2016 U.S. Dist. LEXIS 125927, 2016 WL 4992582, at *8, *24 (S.D.N.Y. 2016); *Noel v. BNY-Mellon Corp.*, 2011 U.S. Dist. LEXIS 115828 at *2 (S.D.N.Y. 2011).

**Joint Instruction No. 22:  Retaliation – PLAINTIFF'S VERSION**

Plaintiff claims that Defendants retaliated against him by terminating him because he requested a reasonable accommodation. Defendants deny these allegations and assert that all of their actions were taken for legitimate, non-discriminatory reasons.  The laws under which Plaintiff makes these claims are the ADA, SHRL and NYCHRL.

Plaintiff asserts that he filed a requests for reasonable accommodations and was subsequently terminated in violation of  the ADA SHRL and CHRL.

Accordingly, to make out his claim of retaliation, Plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

1.    First, that he engaged in protected activity;

2.    Second, that  Defendants were aware of that protected activity;

3.    Third, that Plaintiff was then subjected to an adverse action by one of the Defendants; and

4.    Fourth, that a causal connection exists between the alleged adverse employment action and the protected activity.

Here, there is no dispute regarding the first, second or third elements. Regarding the fourth element under the ADA and SHRL, the Plaintiff must prove a causal connection between Plaintiff's request for an accommodation and the subsequent termination.  Plaintiff must show by a preponderance of the evidence that the subsequent termination would not have been taken but-for the Plaintiff's request for an accommodation

Under the CHRL Plaintiff is not required to show a "but-for" cause, only that the Defendants made the determination to terminate him and were motivated in some part by him engaging in protected activity. Therefore, if Plaintiff cannot demonstrate that retaliation played some part in Plaintiff's termination, then you will find that he has not established a causal connection between his request for an accommodation and his subsequent termination.

**SOURCE:**   *Digianni v. Am. Int'l Group*, 2010 U.S. Dist. LEXIS 34015, *12; *Whidbee v.Garzarelli Food Specialities Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Schjano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 307 Fed. Appx. 596, 599 (2d Cir. 2009); *Warren v. Goord*, No. 06-3349- pr, 2008 U.S. App. LEXIS 24272, at *5 (2d Cir. Nov. 26, 2008) (*citing Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). *Dauer v. Verizon Commc'ns Inc.*, 2009 U.S. Dist. LEXIS 21506 (S.D.N.Y. 2009); Mauskopf v. Dist. 20 of the NY City Dep't of Educ., 229 Fed. Appx. 100, 101 (2d Cir. 2008). *Univ. of Tex. SW Med. Ctr. V. Nassar*, 133 S. Ct 2517, 2533 (2013); *Mount Healthy City School dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

**Joint Instruction No. 22:  Retaliation – DEFENDANTS' VERSION**

Plaintiff claims that Defendants retaliated against him because of his disability when they terminated his employment, effective January 4, 2021. Defendants deny these allegations and assert that all of their actions were taken for legitimate, non-discriminatory reasons – Plaintiff failed to return to work medically cleared and thus could no longer provide direct patient care and safety.  The laws under which Plaintiff makes these claims are the ADA, SHRL and CHRL.

Plaintiff asserts that he filed a request for a reasonable accommodation and was subsequently terminated in violation of  the ADA SHRL and CHRL.

Accordingly, to make out his claim of retaliation, Plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

1.    First, that he engaged in protected activity;

2.    Second, that Defendants were aware of that protected activity;

3.    Third, that Plaintiff was then subjected to an adverse action by one of the Defendants; and

4.    Fourth, that but-for the protected activity, no adverse action would have been taken.

Here, there is no dispute regarding the first, second or third elements. Regarding the fourth element under the ADA and SHRL, the Plaintiff must prove a causal connection between Plaintiff's request for an accommodation and the subsequent termination.  Plaintiff must show by a preponderance of the evidence that his termination would not have been taken but-for the

Plaintiff's request for an accommodation.  Here, the Plaintiff must prove by a preponderance of

the evidence that retaliation was the sole motivating factor in Defendants' employment decision.

However, Plaintiff is not required to show but-for causation under the CHRL. Under the CHRL,

Plaintiff need only show that retaliation played some role in his termination. If Plaintiff cannot

demonstrate that retaliation played some part in his termination, then you must find that he has not

established a causal connection between his request for an accommodation and his subsequent

termination.

The Defendants contend that there were legitimate, non-retaliatory reasons for their

decision to terminate Plaintiff because regardless of Plaintiff's request for an accommodation, he

could not perform the essential functions of the job, with or without an accommodation.


**SOURCE:**  *Whidbee v. Garzarelli Food Specialities Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Schjano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 307 Fed. Appx. 596, 599 (2d Cir. 2009); *Warren v. Goord*, No. 06-3349- pr, 2008 U.S. App. LEXIS 24272, at *5 (2d Cir. 2008) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Dauer v. Verizon Commc'ns Inc.*, 2009 U.S. Dist. LEXIS 21506 (S.D.N.Y. 2009); *Mauskopf v. Dist. 20 of the NY City Dep't of Educ.*, 229 Fed. Appx. 100, 101 (2d Cir. 2008). *Univ. of Tex. SW Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Mount Healthy City School dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

**Joint Instruction 23:  Retaliation Evidence to be Considered in Causal Connection[7] - DEFENDANTS' VERSION**

In determining the question of Defendants' motivation, you should consider all the

evidence in the case, including the timing of the allegedly retaliatory acts, the testimony of the

witnesses, and the documents in evidence.  I caution you that your function is to determine only

whether a motive to retaliate was the reason for termination.

---

[7] Plaintiff believes this Instruction is not necessary, as the Court will have already instructed the jurors on what evidence is.

Plaintiff cannot prevail merely by showing that he was treated in a way that he or others might think is unfair. An employer has the right to assign a particular job to an employee, to discipline an employee, or even to discharge an employee for any reason or no reason at all so long as intentional retaliation is not the reason. You are not to second-guess the wisdom or reasonableness of the Defendants' employment practices or decisions. Defendants have the right to make personnel decisions for any reason, or no reason at all.

Plaintiff's own subjective belief that he was retaliated against is not enough to meet his burden of proving that Defendant's stated reasons for their action were pretextual or a disguise for retaliation.

**SOURCE:** *Rasco v. BT Radianz,* 2009 U.S. Dist. LEXIS 21540, at *25 (S.D.N.Y. 2009)(quoting *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal")); *Williams v. J.P. Morgan Chase Bank*, 2005 U.S. Dist. LEXIS 52055, at *51-58 (S.D.N.Y. 2005) (citing *Taylor v. Polygram Records*, 1999 U.S. Dist. LEXIS 2583, at *46 (S.D.N.Y. 1999) (holding that Plaintiff's belief that she was discriminated against, "based on no evidence other than gut instinct," cannot support inference of discrimination).

## Joint Instruction 24: Aiding and Abetting – PLAINTIFF'S VERSION[8]

Plaintiff claims that Defendants Scott Mellynchuk and Doug Lazzaro are liable for aiding and abetting for the discrimination and retaliation that occurred. Defendants deny these allegations, assert that no discrimination or retaliation occurred and that all of their actions were taken for legitimate, non-discriminatory reasons.

In order to prove both aiding and abetting and supervisory liability, Plaintiff must prove that (1) the discrimination and/or retaliation occurred; and (2) that Defendants can be held responsible for the offending conduct. Defendants can be held liable for the offending conduct (1)

---

[8] Defendants believe that aiding and abetting and supervisor liability should be a single combined instruction.

where the offending employee exercised managerial or supervisory responsibility; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; or (3) where the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it.

In this case, Defendants do not dispute that Mellynchuk and Lazzaro exercised managerial and supervisory responsibilities. Therefore, if you find that Mellynchuk and Lazzarro discriminated against or retaliated against the Plaintiff by terminating him, then you have found aiding and abetting and supervisory liability.

**SOURCE:**    *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); Administrative Code of City of NY § 8-107 (13) (b) (1)-(3); *Pichardo v. Carmine's Broadway Feast Inc.*, 199 A.D.3d 593, 159 NYS3d 12 (1st Dept 2021).

## Jury Instruction 25: Supervisory Liability – PLAINTIFF'S VERSION[9]

When it comes to the acts of supervisors**,** the New York City Human Rights Law holds employers responsible for the unlawful acts of employees with managerial or supervisory responsibilities. If you believe any of Defendants' employees engaged in unlawful conduct and you believe those employees hold managerial or supervisory responsibilities, then you should impute their behavior onto the corporate defendant or defendants that employ them.

**Source:** N.Y. City Administrative Code Section 8-107(13)**.**

## Joint Instruction 24-25:  Aiding and Abetting and Supervisor Liability – DEFENDANTS' VERSION[10]

---

[9] Defendants believe that aiding and abetting and supervisor liability should be a single combined instruction.

[10] Defendants believe that aiding and abetting and supervisor liability should be a single combined instruction.

Plaintiff claims that Defendants Scott Mellynchuk and Doug Lazzaro are liable for aiding and abetting and supervisory liability for the discrimination and retaliation that occurred. Defendants deny these allegations, assert that no discrimination or retaliation occurred and that all of their actions were taken for legitimate, non-discriminatory reasons – Plaintiff could no longer provide direct patient care and safety.

In order to prove both aiding and abetting and/or supervisory liability, Plaintiff must prove that (1) the discrimination and/or retaliation occurred; and (2) that Defendants can be held responsible for the offending conduct. Defendants can be held liable for the offending conduct (1) where the offending employee exercised managerial or supervisory responsibility; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; or (3) where the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it.

In this case, Defendants do not dispute that Mellynchuk and Lazzaro exercised managerial and/or supervisory responsibilities. Therefore, if you find that Mellynchuk and Lazzarro discriminated against or retaliated against the Plaintiff by terminating him, then you have found aiding and abetting and supervisory liability.

**SOURCE:** *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); Administrative Code of City of NY § 8-107 (13) (b) (1)-(3); *Pichardo v. Carmine's Broadway Feast Inc.*, 199 A.D.3d 593 (1st Dept. 2021).


## IV - AS TO DAMAGES

## Joint Instruction No. 26:  Damages Generally – PLAINTIFF'S VERSION

I will now instruct you on how to award damages.  The fact that I am giving you instructions on the subject of damages should not be construed by you as indicating that I believe

Case 1:22-cv-01248-JLR-GWG    Document 121    Filed 06/03/25    Page 47 of 59


you should find for Plaintiff. That is entirely up to you. As a judge, I am required to instruct all juries on damages in all cases whether or not there is merit to a Plaintiff's claims.

Compensatory damages are designed to restore the Plaintiff to the same position he was in prior to the injury; that is, to compensate for the damage suffered as a direct result of the Defendants' conduct. You may not presume that Plaintiff has been damaged. The burden is on Plaintiff to prove each item of his damages by a preponderance of the credible evidence. The damages you award must be based on the evidence presented at trial, not on speculation or guesswork. The Plaintiff has an obligation to show sufficient facts and circumstances to permit you to make a reasonable estimate of each item of damages. If Plaintiff fails to do that, then Plaintiff cannot recover for that item of damages.

If you do find that Plaintiff is entitled to recover from the Defendants, you must render a verdict in a sum of money that will justly and fairly compensate, or make whole, Plaintiff for all the losses resulting from the injuries he sustained.

**SOURCE:**    29 U.S.C. § 2617(a)(1)(A); O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §§ 171:90, 171:91, 171:92 (5th ed. 2000).

**Joint Instruction No. 26: Damages Generally – DEFENDANTS' VERSION**

I will now instruct you on how to award damages. The fact that I am giving you instructions on the subject of damages should not be construed by you as indicating that I believe you should find for Plaintiff. That is entirely up to you. As a judge, I am required to instruct all juries on damages in all cases whether or not there is merit to a Plaintiff's claims.

Compensatory damages are designed to restore the Plaintiff to the same position he was in prior to the injury; that is, to compensate for the damage suffered as a direct result of the Defendants' conduct. You may not presume that Plaintiff has been damaged. The burden is on Plaintiff to prove each item of his damages by a preponderance of the credible evidence. The

damages you award must be based on the evidence presented at trial, not on speculation or guesswork. The Plaintiff has an obligation to show sufficient facts and circumstances to permit you to make a reasonable estimate of each item of damages. If Plaintiff fails to do that, then Plaintiff cannot recover for that item of damages.

The Plaintiff has a duty under the law to "mitigate" his damages—to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the Defendants' actions or omissions. Plaintiff fails to mitigate his damages and is not entitled to backpay or front pay to the extent he fails to remain in the labor market, fails to accept substantially similar employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason. Joining a training program instead of seeking comparable employment does not fulfill Plaintiff's duty to mitigate his damages. A Plaintiff who, for personal reasons, declines a job substantially equivalent to the one he previously filled, has not adequately mitigated damages. A few phone calls to former colleagues does not satisfy Plaintiff's mitigation requirement.

The Defendants have the burden of proving that the Plaintiff failed to mitigate. If the Defendants persuade you, by a preponderance of the evidence, that the Plaintiff has failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of the Plaintiff's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In determining the amount of damages, you must exercise good judgment and common sense. The purpose of a damage award is to make a Plaintiff whole, that is, to compensate for the injuries, if any, that resulted from the Defendants' violation of his legal rights. The damages that you award should be fair and reasonable, neither inadequate nor excessive.

Plaintiff is also seeking to recover damages for emotional distress. In order to recover for emotional distress, Plaintiff must present credible testimony with respect to the claimed emotional distress and mental anguish, in addition to, some corroboration of that testimony, by circumstances that you reasonably believe would give rise to emotional distress and mental anguish, and therefore afford some assurance that the claim is genuine.

In your determination of the amount of monetary damages for emotional distress, you should consider the nature, character and severity of those injuries. In this regard, while it is not required that the Plaintiff seek medical treatment by a doctor or psychiatrist or psychologist, you may consider the fact that he did consult one. You may also consider the duration of these injuries. To award such damages you must also find that the Plaintiff has proved by a preponderance of the evidence that his emotional distress was the result of unlawful discrimination.

You may not speculate about such damages. If you find that Plaintiff has proved that he suffered mental or emotional distress caused by the unlawful discrimination, you must fix an amount of damages that will, as much as money can, fairly compensate the plaintiff for her emotional distress. Damages for emotional distress must be based on the evidence presented at trial, and only on that evidence. They must not be based on speculation or sympathy. In sum, your award must be fair and just. It should be neither excessive nor inadequate. It should be reasonable.

**SOURCE:** 29 U.S.C. § 2617(a)(1)(A); O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §§ 171:90, 171:91, 171:92 (5th ed. 2000); *Sanderson v. Leg Apparel LLC*, 2024 U.S. Dist. LEXIS 37649, at \*12-13 (S.D.N.Y. 2024); *EEOC v. AZ Metro Distribs., LLC*, 2020 U.S. Dist. LEXIS 237752, at \*13, n.6 (E.D.N.Y. 2020); *Reilly v. Cisneros*, 835 F. Supp. 96, 99 (W.D.N.Y. 1993), *aff'd*, 44 F.3d 140 (2d Cir. 1995); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998); *Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 2015 U.S. Dist. LEXIS 42422, at \*3-4, 12-13 (S.D.N.Y. 2015).

**Joint Instruction No. 27: Nominal Damages**

If you return a verdict for Plaintiff, but he has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury. Nominal damages are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

**SOURCE:** Federal Jury Practice & Instructions § 172:73 (6th ed.)

**Joint Instruction No. 28:  Compensatory Damages – PLAINTIFF'S VERSION[11]**

The purpose of the law of damages is to award, as far as possible, just and fair compensation for any loss that resulted from the Defendants' violation of Plaintiff' rights. If you find that the Defendants are liable on any of Plaintiff's claims, as I have explained them, then you must award him sufficient damages to compensate for any injury he suffered as a result of the Defendants' wrongdoing. Compensatory can be both non-economic and economic.

Compensatory damages can be inferred from the circumstances presented to you by the evidence, or they can be proven by testimony going solely to the issue of damages. They are not limited merely to expenses that Plaintiff may have incurred, although if you find that such expenses have been incurred, your award of compensatory damages should include them. For example, if you find that Plaintiff incurred any costs and expenses for healthcare providers or medication, or is more likely than not to incur expenses for them in the future, you may include such amounts in your award, so long as you find those expenses were, or will have been, proximately caused by the

---

[11] Defendants object to the addition of a separate instruction on compensatory and emotional distress damages.

Defendant's unlawful acts. This includes lost wages and other economic harms. An award of compensatory damages for mental anguish may be based solely on the complainant's testimony. Compensatory damages include damages for emotional pain and suffering, mental anguish, humiliation, indignity, embarrassment, emotional distress, shock, discomfort, inconvenience and loss of enjoyment of life that you may find he has suffered as a result of the Defendants' unlawful conduct. The words "embarrassment" and "humiliation" are used in their everyday meaning. Not every embarrassment and humiliation, however, is compensable. Embarrassment and humiliation are compensable only when a reasonable person with ordinary sensibilities under the same or similar circumstances would be embarrassed or humiliated.

In additional to emotional distress, non-economic compensatory damages you can award Plaintiff monetary damages in the form of back-pay, front-pay, out of pocket expenses, and other economic loss that came about as a result of Defendants' alleged violations of law.

If you find that Defendants subjected Dr. Ahmad to an unlawful termination, for example, then you must award as actual damages an amount that reasonably compensates him for any lost wages and benefits, that Dr. Ahmad would have received from Defendants had Plaintiff not been the subject of Defendants' discrimination.

Back pay damages, if any, applies from the time Plaintiff was terminated until the date of your verdict. If you award back pay, you are instructed to deduct from the back pay figure whatever wages Plaintiff has obtained from other employment during this period.[27] Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. Factors to be considered in determining front pay include the age of the plaintiff and his reasonable prospects of obtaining comparable employment

The Plaintiff has a duty under the law to "mitigate" his damages—to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the Defendants' actions or omissions. Plaintiff fails to mitigate his damages and is not entitled to backpay or front pay to the extent he fails to remain in the labor market, fails to accept substantially similar employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason. Joining a training program instead of seeking comparable employment does not fulfill Plaintiff's duty to mitigate his damages. A Plaintiff who, for personal reasons, declines a job substantially equivalent to the one he previously filled, has not adequately mitigated damages. A few phone calls to former colleagues does not satisfy Plaintiff's mitigation requirement.

The Defendants have the burden of proving that the Plaintiff failed to mitigate. If the Defendants persuade you that the Plaintiff has failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of the Plaintiff's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In determining the amount of damages, you must exercise good judgment and common sense. The purpose of a damage award is to make a Plaintiff whole, that is, to compensate for the injuries, if any, that resulted from the Defendants' violation of his legal rights. The damages that you award should be fair and reasonable, neither inadequate nor excessive.

**SOURCE:**   29 U.S.C. § 2617(a)(1)(A); O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §§ 171:90, 171:91, 171:92 (5th ed. 2000); Model Civ. Jury Instr. 3rd Cir. § 8.4.2 (2019)(modified);  "Any form of money damages is a legal remedy to be decided by the jury under the New York State Human Rights Law." Chisholm v. Mem'l Sloan-Kettering Cancer Ctr., 824 F. Supp. 2d 573 (S.D.N.Y. 2011); Thomas v. iStar Fin., Inc., 508 F. Supp. 2d 252, 261 (S.D.N.Y. 2007); Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993); Argyle Realty Associates v State Div. of Human Rights, 65 AD3d 273, 882 NYS2d 458; State v State Div. of Human Rights, 284 AD2d 882, 727 NYS2d 499; Father Belle Community Center v State Div. of

Human Rights on Complaint of King, 221 AD2d 44, 642 NYS2d 739; Marcus Garvey Nursing Home, Inc. v State Div. of Human Rights, 209 AD2d 619, 619 NYS2d 106; Gleason v Callanan Industries Inc., 203 AD2d 750, 610 NYS2d 671.; Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir. 1998); Mihalik v Credit Agricole Cheuvreux N. Am., Inc., 2015 U.S. Dist. LEXIS 42422, at *3-4, 12-13 (S.D.N.Y. 2015)

**Joint Instruction No. 29:  Punitive Damages – PLAINTIFF'S VERSION[12]**

If you find in favor of Plaintiff you are allowed to award punitive damages to him, and against the Defendants.

The purpose of an award of punitive damages is to punish a wrongdoer for misconduct and to warn others against doing the same. You may, but do not have to, award these damages, if you find that the Defendants willfully violated Plaintiff' rights, or acted wantonly, recklessly or maliciously in doing so. You may also award punitive damages if you find Defendants' actions amount to a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

If you decide to award punitive damages, it is up to you to determine a fair, just and reasonable amount which would be sufficient to deter the Defendants, and others like them, from engaging in similar wrongful conduct in the future.

Plaintiff does not need to demonstrate that the Defendants' conduct was egregious or outrageous in order to be entitled to punitive damages; instead, he needs only to have shown that the Defendants either knew or perceived that there might be a risk that they were violating his rights, or that the Defendants acted maliciously toward Plaintiff.32

---

[12] Defendants dispute the inclusion of a punitive damages instruction because the record does not support a claim for punitive damages.

It is also not necessary for Plaintiff to present direct evidence of malicious intent, or reckless indifference, on the part of a Defendant in order to justify an award of punitive damages against Defendants. Such intent may be inferred by you from the nature of the acts committed by the Defendants, and from the facts and circumstances surrounding such acts.

There is also no requirement that Plaintiff show a pattern of wrongdoing for punitive damages to be awarded; a single act, which is either malicious or recklessly indifferent to his statutorily protected rights will suffice.

If you decide to award punitive damages to Plaintiff, you should consider the following factors in assessing the amount of such damages:

> (1) The nature and reprehensibility of what the Defendants did, including the character of the wrongdoing; whether the Defendants' conduct demonstrated an indifference to, or reckless disregard of, the rights of others; the vulnerability of Plaintiff; how long the conduct went on; the Defendants' awareness of the harm caused by their conduct; and any concealment of the conduct;

> (2) The actual and potential harm created by the Defendants' conduct (including Plaintiff' trouble and expense in seeking to protect its interests in this lawsuit, and any prior legal proceedings); and

> (3) The Defendants' financial condition and resources, and the impact that your award will have on them.

The amount of punitive damages you award must be reasonable and proportionate to the actual and potential harm suffered by Plaintiff, and to any compensatory damages which you award.

The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages and it is not necessary that you award compensatory damages to Plaintiff in order to assess punitive damages against Defendant, so long as you find in favor of Plaintiff and against Defendant on the question of liability.

**SOURCE:**          Levitant v. New York Human Res. Admin., Index No. 1:05-cv-00230-KAM-JO, Dkt. No. 141 (E.D.N.Y Apr. 24, 2012) (Matsumoto, J.); Sand, Modern Federal Jury Instructions Civil 77.03 (2017); 42 U.S.C. §1981a(a)(1), (b)(2) and (b)(3); Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264-65 (1946); Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York, 310 F.3d 43, 56 (2d Cir. 2002); Walz v. Town of Smithtown, 46 F.3d 162, 170 (2d Cir. 1995); Miner v. City of Glens Falls, 999 F.2d 655, 663 (2d Cir. 1993); Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992); Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625(1983); Keenan v. City of Philadelphia, 983 F.2d 459, 471 (3d Cir. 1992); Soderbeck v. Burnett Cty., 752 F.2d 285,289 (7th Cir. 1985) cert denied, 471 U.S. 1117, 105 S.Ct. 2360 (1985); Kolstad v. American Dental Ass'n, 527 U.S. 526, 538-39, 119 S.Ct. 2118, 2126 (1999); N.Y.C. Admin Code § 8-502(a). ; Hennessy v. Penril DataComm Networks, 69 F.3d 1344, 1351-52 (7th Cir. 1995); Edwards v. Jewish Hosp., 855 F.2d 1345, 1352 (8th Cir. 1988); Hicks v. Brown Group Inc., 902 F.2d 630, 653 (8th Cir. 1990); Goodwin v. Circuit Court, 729 F.2d 541, 542-43 (8th Cir.), cert denied, 469 U.S. 828, 105 S.Ct. 112 (1984); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270, 101 S.Ct. 2748, 2761 (1981).; Chauca v. Abraham, 30 N.Y.3d 325, 329, 89 N.E.3d 475, 477 (2017).

**Joint Instruction No. 29:  Punitive Damages – DEFENDANTS' VERSION[13]**

You may also consider whether to award punitive damages against one of the Defendants, all of them, or some but not all of the defendants. Punitive damages are awarded, in the discretion of the jury, to punish defendants for extreme or outrageous conduct, or to deter or prevent the defendant, and others like it, from committing such acts in the future.

You may award Plaintiff punitive damages if you find that the discriminatory acts were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the Plaintiff. An act or failure to act is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the Plaintiff. To obtain punitive damages, Plaintiff must prove by a preponderance of the evidence that Defendants acted maliciously or wantonly with regard to his right not to be discriminated against. An award of punitive damages, however,

---

[13] Defendants dispute the inclusion of a punitive damages instruction because the record does not support a claim for punitive damages.

is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

## V.    PROPOSED GENERAL DELIBERATION INSTRUCTIONS

I will now provide you with general instructions concerning how you should go about arriving at your verdict.  Your verdict is essentially your decision regarding the facts in this case, and more specifically, whether or not they demonstrate by a preponderance of the evidence that Defendants have broken the law.

**Joint Instruction No. 30:  Right to See Exhibits and Hear Testimony;  Communications with Court**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony -- in fact any communication with the Court -- should be made to me in writing, signed by your foreperson, and given to one of the marshals.    In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 78.01, 78-1.

**Joint Instruction No. 31:  Duty to Deliberate/Unanimous Verdict**

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

**SOURCE:** O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §106.01, 106:16 (5th ed. 2000).

**Joint Instruction No. 32:  Election of Foreperson/Special Verdict Form**

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court. Verdict forms have been prepared for your convenience.

*[Read forms of verdict]*.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that  sets forth the verdict upon which you unanimously agree.  You will then return with your verdict  to the courtroom.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 106:04 (6th ed.).

**Joint Instruction No. 33:       Verdict Forms -- Jury's Responsibility**

Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to  what

verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 106:07 (6th ed.).

**Joint Instruction No. 34:       Return of Verdict**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in Court. Once your verdict is announced by your foreperson in open Court and officially recorded, it cannot ordinarily be revoked.

**SOURCE:** 4 Modern Fed. Jury Instr.-Civil 78.01, 78-6.

**Joint Instruction No. 35: Juror's Electronic Communications**

During your deliberations, I remind you that you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as cell phones, iPhones, Blackberries, the Internet, e-mail, text messaging, Twitter, any blog or website, including Facebook, Google+, My Space, LinkedIn, Discord, TikTok, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. You may not use any similar technology or social media, even if I have not specifically mentioned it here.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury

room with your fellow jurors during deliberations. I expect you will inform me immediately if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 103:04 (6th ed.).

**Joint Instruction No. 36:    Juror Oath**

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

**SOURCE:**  Adapted from Instruction 71-4, Modern Federal Jury Instructions—Civil (LexisNexis 2009 ed.).